Good morning your honor and it may please the court my name is Alan Beck the plaintiff appellant Kevin Chen. The matter before this court is whether this defendant's discipline of Mr. Chen was permissible under the First Amendment. We argue there was not and Mahanoy is controlling in Mr. Chen's was disciplined over private communications that comments they made on Instagram which is a social media platform. By private what we mean by that is the Instagram page at issue was not accessible to anyone other than a small group of people which the which had been specifically invited by the Instagram pages provider to be allowed in so ultimately it was a small group of friends. This is very similar to certainly if you have posts with a small group of friends you're taking a risk that you know that they may disseminate those to others you can't control that that distribution and given the nature of the speech at issue here that seemed both foreseeable in its occurrence and in its impact and so why isn't that sufficient to bring it within the scope of something that the school can address under Tinker? Because I believe that position would swallow the general rule that off-campus that students have some right to off-campus speech which is controversial in nature. This is very analogous to if Mr. Chen had been invited over to his friend's house on the weekend and they had private conversations which were controversial in nature in it would not be foreseeable that one of those friends especially since they were also engaged in similar conversations would think to bring that on Monday to the school grounds that would be a betrayal first of the students trust and just simply as a general matter it adopted for this court to adopt that type of foreseeable analysis would mean that it would be impossible for a student to engage in heated political discussion or any other controversial discussion outside of school grounds without the without falling within school discipline. Well but this isn't political discussion I mean this is something that if it had been sent to the students in question would constitute either harassment or potentially even fighting words. Yes your point there however the speech at issue was clearly constitutionally protected and for this court to find that you cannot discuss in private constitutionally protected speech which is simply eviscerated tinkers and Mahanoy's holding that you have a right outside of school or you have a right to some as we go further away from the schools realm and further to where the parents control the students out of the school the right to free speech comes greater and I'd submit just as strong as any non-students. Here if ultimately the whether this is protected speech and. Mr. Beck could I interject a question please? Yes your honor. My question is this what is the best case that you think you have on your side of the argument that would support the idea that something posted on a website as controversial as these posts were would remain private and not be leaked around to other students in the school? As to internet as communications on the internet as to whether this is private I don't believe at least a element court has ruled on this issue on that It was the answer to my question that you don't have any public circuit or published district court precedent or published Supreme Court precedent saying that this could be considered private like the living room home discussion you dealt with a situation where there were roughly 250 an audience of 250 people here I believe somewhere between 10 and 15 people and in Hanoi while the court didn't simply rule on whether this was a speech that could not make it to the school and this was discussed this did not target anyone specifically a much like here where this is a private communication and not as Judge Collins recently has noted is not was not targeted to the people this the speech and issue here is has a I mean this is just normal this should be given the same treatment as these as anyone that's a non-student should have. Okay, thank you. Thank you. But explain to me why the school is not permitted to treat speech that if it were delivered directly would constitute unprotected harassment or potentially fighting words when it is instead disseminated disseminated privately but in a way that foreseeably and indeed arguably inevitably was going to be delivered to the targets of harassment. Are they supposed to just ignore that then they can't do anything about that? I dispute the premise your honor that this were to foreseeable that this was inevitably going to reach the individuals that the students that were to issue here. I'm not suggesting that if statements like these would be made, you know with an earshot or you know, say on a public page that the school might not have the ability to regulate here because this is very simply. I mean if I were to have a conversation with my high school best friend, you know, it's age 16. I mean, there's a reasonable expectation that's going to stay private and this wasn't that much bigger of a group. It really does come down the critical issue is at the time it was posted in the post were maintained. How foreseeable was it to the posters that this would get to the target at that sounds like that's what you're saying. The constitutional line turns on that if they know it's going to go to the person then the school could do something about it. But if they expect it to be siloed then the school could not is that that the line you're drawing? In this particular circumstance, I would agree with that statement, Your Honor. I mean, I think it might be a little bit different if this was, you know, say going to a Trump rally in Washington, D.C. Political speech is something entirely different. But we do have sort of doctrines to take account of. You can't have someone right in front of you and shout abuse at them and expect that that's fully protected. And so the question is how how close are we to that scenario? Actually, I agree with the I agree that this ultimately comes down to whether it was reasonable for the permission to know whether whether it was reasonable for him to believe that these statements were to remain within the circle. I'm not suggesting that if he absolutely knew that this was going to get to the class-faceted issue here, that he would be that the school couldn't get involved. Mr. Beck, let me interject a question. Let me give you a hypothetical. Assume that there's a. A county in which there are about 15 people who want to be in a Ku Klux Klan chapter. You know, they take whatever the oath is they take for that. They want to have a website for their Ku Klux Klan chapter that contains statements of the nature of what was posted here by C.E. and by Chen. With that, what what would be the result of that? Are you saying that would be like a living room discussion with your high school best friend that could be expected to be private would be permissible? This is a website, your honor. Right. No, your honor, because a website is accessible to the public. I mean, if let's say it's a private private room, like on Instagram or whatever. This group was private group. You said the Instagram account was private. The public couldn't view it. So let's say it was the same thing. The Ku Klux Klan chapter members want to set up a private Instagram account like this and post all kinds of hateful stuff there. You saying that would be OK? I think that would be constitutionally protected speech, your honor. And if in this scenario, even if these students were if Ku Klux Klan members were in high school and were within this whole area of free speech law, if they're having discussion privately on this Instagram page, that's absolutely constitutionally protected. The First Amendment, there's a broad range of cases that were cited in the briefing that say that that's outside of the school speech area. This is exactly the type of unfavorably unfavorable speech that has been protected under free speech jurisprudence. Students, just simply because we're dealing with students here, does not mean that they should lose their right under the First Amendment. I understand that argument, but your argument seems to go beyond that and to say that it's not just students that instead of being like a mini me kind of student Ku Klux Klan group, it was like the whole community of Klan members that would also be protected. You're saying that would be protected speech for the same reason. I thought that was your argument. Yes, I was just limiting my argument to students. I mean, if these were not students, then if these were simply normal citizens, they would have, that would be almost definitely protected as long as it didn't follow one of the fighting words, one of the other obscene speech, one of the other carve outs that's historically unprotected speech. I have a one minute left. May I reserve the rest of my time? Yes. And I'll give you another two minutes. So we'll make your rebuttal argument three minutes. Thank you, Your Honor. She can plan for that. Now we'll hear from Mr. Gordon. Thank you, Your Honors. Good morning and may it please the court. Seth Gordon on behalf of Albany Unified School District and the individual school official defendant appellees in this case. Your Honors, by way of some brief background, in 2017, a group of high school students at Albany High School created an Instagram account that was used by approximately 14 other students as a forum to post extremely racist images directed at their classmates. A student identified as CE, who is the appellant in the related appeal and next on the court's calendar was the creator of the account and posted the images on the account, including the image of the high school girls basketball team with a noose drawn around the neck of one of the black female students and the black coach. Kevin Chen, the appellant in this appeal, was one of the primary contributors to the account and among other things, took pictures of some of his black female classmates during class. What exactly was he, what was, with respect, I understand with respect to CE, but with respect to Chen, what exactly were the posts for which he was disciplined? Yes. Thank you, Your Honor. So I, and I think it's very important to actually see the posts. They were filed under seal, so I will not publish them so that the public can view them, but I would like to take some time to go through those. I think it's very important to actually see the posts that he was disciplined for. And I would also say on this point, Your Honors, appellant takes the somewhat remarkable position that the court should actually ignore what Chen said in this case. And at page five of a supplemental brief, he actually says, quote, the content of Kevin Chen's speech is not relevant here, end quote. I would submit to the court and as I'll discuss, that's wrong as a matter of law. So now getting to the, Judge Collins, the actual posts. The first is at 2 S.E.R., page 172. Mr. Gordon, let me just question, pose a question as to this. If these are filed under seal, then this argument is a public argument that is being seen around the world in law schools. Can you review the materials in the sealed documents? Yes, I believe so, Your Honor. So they're in the E.R., the excerpts of record that appellant filed. He provided the redacted copies of some of the posts. We provided under seal unredacted copies of some of the posts to protect the identities of the students. I will not mention the students' names. And I think a description of the posts is in the public record already through the briefing. OK, thank you. Again, Your Honors, I would direct the court to 2 S.E.R., page 172. And if the court would like to scroll there or follow along with me, I would invite the court to do so. This is a picture of a black female student taken during class by Kevin Chen. The copies I have, I have physical copies, but mine don't have the S.E.R. numbers on them. But I do have the E.C.F. page number at the top. So if you can give me that, I can follow along. So, Your Honor, the sealed copies that I have do not have E.C.F. stamps because we have converse problems. But to go again to the court's question about what posts Chen was actually disciplined for. Again, I would I would direct the court to this. And there are many others. But starting with this one. And again, it's at S.E.R. 172. It's a picture of a black female student taken during class by Chen without the student's permission. You can see that appellant added the caption, quote, The gorilla exhibit is nice today, end quote. In other words, Your Honors, Chen was comparing this black female classmate to a gorilla. And I think it needs little explanation to understand how this is literally. Chen was the one who was personally responsible for both the photo and the caption in that case. That was what the evidence was, Your Honor. OK, thank you. The next image, Your Honor, is at 2 S.E.R. page 136. I won't actually scroll to that one. But this is, again, another image of a black female student that appellant Chen admitted to taking during class without the student's permission and providing to be posted on the account. The next image, Your Honor, is at page 144. And I will scroll to that one just so I can see it. And, Your Honor, this is one of the more hurtful posts, in my opinion. On one side of the page, it shows an image of one of Chen's black female classmates. On the other side of the screen, the post compares the student's face to the face of a gorilla. If you look at the next page, it shows the followers of the account, some of their comments. And I'll scroll there. That's page 145 of the S.E.R. But did Chen post that or he commented on it? Commented on this one, Your Honor. Commented on that one. OK. So, appellant Chen, on, like I said, page 145 of the S.E.R., his profile name was Kevin with three Ks at the beginning. Comments, quote, it's too good, end quote, seemingly gleeful about the post. One of the other followers of the account, who was friends with the girl depicted on the account, says, quote, hey, not funny, F you, delete this. Chen responds with the epithet, quote, no F you, you dirty zookeeping son of a bitch, end quote. The next image, Your Honor, appears at 2 S.E.R. 143. For some reason, my PDF doesn't want to pull that one up, but I can still describe it. This is a post of a male black student asking to follow the account. C.E. took a screenshot of the request and posted the comment, quote, who the F is this N word? And for everybody's sake, I'm not going to use the actual words, but he did use the actual words. And that line in that one is by Chen. No. So the statement that the caption of who the F is, this N word was made by C.E. OK, correct. Appellant Chen hit the like button so that all the other followers could could see that he liked that post. And finally, Your Honors, I would direct the court to 2 S.E.R. page 208. This is a Snapchat post that was provided by one of the victims. It shows a picture of Appellant Chen in which he refers to one of his black male classmates as a, quote, gigaboo, which this court may or may not know is a highly derogatory term for African-Americans. And so I just want to be clear about what Appellant Chen is. And who made that? Who is the person who made that particular comment? Your Honor, Appellant Chen was responsible for that Snapchat post. So if I'm getting this correctly, two of the of the offensive posts were composed by Chen and the others are things that he commented on. Yeah, I believe that's what's in the record, Your Honor. OK. All right. I just wanted to understand exactly what and in between the two cases, what Chen was responsible for and what C.E.R. was responsible for. Thank you, Your Honor. So to be clear about what Appellant Chen's argument is in this case, it's that he can go to school, take pictures of his black female classmates and then post dehumanizing and racist comments about them on Instagram and that the school can't discipline him because it either occurred off campus or because he didn't think that those that those comments were going to make their way back to the victims. Your Honors, that finds no support in the case law, which is where I'd like to turn to next. Very briefly. Judge Gold, you asked what Appellant's best case was and whether there was a case that was similar. And there is. And so this circuit has addressed off campus speech on four separate occasions. I'd like to briefly run through those. And then the case that's directly on point is from the Eighth Circuit, which is referenced in this court's decision in C.R. But so this court addressed off campus speech in 2001 in the Levine case. It addressed it again in 2013 in the Weiner case. Now, admittedly. Mr. Gordon, I think when I was asking Mr. Beck a question, I was asking him what was the best case he thought that supported his client's position. So I'm aware of the cases. OK, I apologize. Thank you for that. So the Levine case in the Weiner case involves speech related to school shootings. I think that the more relevant case comes from this court in 2016. It's the C.R. versus Eugene School District 4J case. Again, 2016, this court addressed discipline of a student who made sexually harassing comments to a student off campus. And this court held that the sexually harassing speech, if directed at another student, interferes with the right of the student to be secure and that the court could therefore discipline the student under Tinker. In the C.R. case, this court mentioned the Fourth Circuit's decision in Kowalski, which involved online bullying on MySpace. It also mentioned the S.J.W. versus Lee Summit R-7 school district case that's out of the Eighth Circuit. I think that's the most factually similar case to this case. And in the S.J.W. case, you had two brothers in high school that had created a Web site that contained racist and sexually harassing comments directed towards students. They actually created the Web site under a Dutch domain name so that people couldn't generally access it and only shared it with five or six students. The Eighth Circuit said it doesn't matter that this was intended to be private because if you look at the content of the speech and the targets of the speech, which were students, it was reasonably foreseeable that it was going to make its way onto campus, which it in fact did. Now, I think the fourth case that this... Is that the standard? Is it reasonably foreseeable in the tort sense that it's just one could imagine that it's possible or does there have to be some kind of a showing that it's likely, that the person knew it was likely? Judge Collins, I'm not sure that that is answered in the case law, but I would say in where I was going to turn next, the McNeill case sets forth the test, which includes reasonable foreseeability. But that is the applicable test. BL does not overrule this court's decision in McNeill. So I'd like to go through the McNeill factors briefly. So McNeill was an off-campus speech case. It expressly adopted what it calls the nexus test. And then it said to determine if the nexus test is satisfied, you look at three factors. The first is the degree of likelihood of harm to the school caused by the speech. The second factor is whether it was reasonably foreseeable that the speech would reach and impact the school. And the third is the relation between the content and the context of the speech and the school. And I would submit to the court that all three of those factors are clearly satisfied. And turning for a second to argument that this Chin's speech was intended to be private. I discussed the post where he was arguing with his classmate who was friends with one of the victims. I also discussed the post where a black male student had asked to follow the account. And then there was other derogatory comments. I would submit to this court that given the context and content of those posts and the fact that Chin was taking pictures of female students at school without their permission, it wasn't only reasonably foreseeable, it was inevitable that this speech was going to make its way onto campus. And it, in fact, did make its way onto campus. How soon after the postings did they get all this at the campus? Your Honor, it's my understanding, and I think the evidence reflects that these postings were made over several months. And that at some point after months of this content, one of the followers shared it with one of the victims. That happened on the weekend. The day after that happened, the victims learned of the account and actually saw the content actually made its way onto campus. And on that point, well, I'm sorry, Your Honor. Let me briefly address BL because I think that it is a very important case, but it doesn't stand for what appellant says it is. I think that there's four important points from the Supreme Court's BL decision. The first is that the case is very factually different from this case. You had a high school student in BL who didn't make the cheer team, and she posted on Snapchat, quote, F school, F softball, F cheer, F everything. And I think that, well, in other words, there was no speech in BL involving or targeting other students as there was here. The second point about BL, Your Honors, is that the Third Circuit held in BL that schools never have the authority under Tinker to discipline students for off-campus speech. The Supreme Court expressly rejected that rule. And I won't read through the quote, but it's at page 411 of the lawyer's edition of the opinion that the court expressly rejects that proposition. The third point, Your Honors, is that the high court in BL refused to give us a standard or a rule governing these off-campus speech cases. They left it open. They expressly say in the decision, we're going to leave this open. And that's why I can say with confidence that it did not overrule this court's ruling in McNeil or CR or the Levine case or the Weiner case or the SJW case, for that matter. Your Honors, I'd like to very briefly touch on the point that this was somehow private. I think that that's factually inaccurate. It wasn't private. This isn't a situation where Chen went home and wrote something in his diary where nobody could see. There were at least 13 or 14 other student followers. Moreover, as I've already said, the speech did make its way onto campus. So at that point, there is no question that it was no longer private. And I think most importantly for this private issue is that the courts have addressed it. The court addressed it in the SJW case and says, no, we're going to look at the content and context of the speech. And the court and this court made the same point in the McNeil decision. Your Honors, I see that I'm out of time. I know I'll have another 15 minutes to address basically the same issues in the CE case. Mr. Gordon, let me suggest this. I gave Mr. Beck a two minutes extra. So if you need to spend a minute or two to wrap up your current argument, just go ahead and do that. I appreciate that. Thank you, Honor. I'll take the court up on that. I would just like to say that the speech in this case did cause the substantial disruption. Can I ask how many students are in the school? What's the total enrollment? Your Honor, I don't have that number off the top of my head. I can represent to the court that it's a large school. I would say that there's thousands of students. Concerning the substantial disruption, I would just say that this is in our briefing. The girls, after they found out that they were targeted, were found in the hallway. They should have been in class. They were crying hysterically and yelling. Counselors and mental health staff had to be called in. Law enforcement had to be called. One female student depicted on the account testified that she was afraid to go to class. Another female victim missed multiple days of school. Another student testified that she became scared. Another student depicted on the account was pulled out of school entirely by her parents. Classes were disrupted by students wanting to talk about the issues. The incident garnered media attention, and the district office was inundated with calls from concerned parents and community members at large. I would say that the evidence is quite clear that this speech had a substantial disruptive effect on campus. Unless the court has any other questions, I would ask that the court affirm summary judgment in favor of the school district and the individual defendant school officials in the Chen case. Thank you, Mr. Gordon. We appreciate your argument. Now, we'll hear further from Mr. Beck. My first point is a factual one. My understanding is that Chen never actually had control of the Instagram account. So everything that he posted were comments to posts that CE made. Do you dispute that he wrote the caption for the photo at SCR 172? I don't know the answer to that one way or another. Okay, because I mean, I wanted to understand and that's why I asked the question. I wanted to understand very clearly with respect to Chen, who is a little bit differently situated than CE. I wanted to know what it was content that he composed and what was comments and be clear about that. What I know is that he didn't post them. He did not have control of the Instagram page. So he was not the one that posted them. But he could add content to the page, right? He could add a substantive statement. I know there are some things in communication with CE that I don't want to represent to the court. Whether there were not some things that he may have done apart from the actual Instagram page. I took your opposing counsel pretty carefully through each of the particular posts that on which he was relying for discipline. Can I ask you if you know when reviewing this, the tape of this, if you disagree with any of the factual assertions that he made that you let us know by a supplemental letter, if that's appropriate? Yes, Your Honor. Just quickly, I'd like to touch on this court's jurisprudence. To the extent that any of that is still controlling, I think that Mahoney has changed the legal landscape. But if this court were to find otherwise, I'd like to remind this court that every single situation where someone wasn't either at school or directly adjacent to school and they were disciplined. The court found that the writings at issue were credible threats to school safety. That's something which simply is not an issue here. There was one, the most recent one, dealt with personal fantasies over school shooting. And the court in its procuratorial decision made very clear that it was limiting its holding to the fact that this was a credible threat to school safety rather than a bright line rule that writings of this nature could be regulated. And there simply is nothing within this surface jurisprudence that supports the contention that two students at school can regulate something that was made in between two students. And with that... Go ahead, Mr. Beck. Oh, I was going to... With that, I will conclude my argument unless this court has any questions for me. I have no question, Judge Collins. No, nothing. Okay, well... Thank you, Your Honor. The Chen case will therefore now be submitted. If Mr. Price, the court deputy can make that entry. I'll just advise the parties that the case has been very well, well argued by counsel on both sides of the case. And the advocates will hear from the court in due course.
judges: GOULD, COLLINS, Silver